2005-NMCA-056

134 P.3d 811

Gordon **SMART** and Sylvia Smart, husband and wife, and Sam Tyra and Lidia Tyra, husband and wife, Plaintiffs–Appellants,

v.

Jimmy **CARPENTER**, Defendant–Appellee.

No. 25,667.

Court of Appeals of New Mexico.

March 30, 2006.

Richard A. Hawthorne, P.A., Richard A. Hawthorne, Ruidoso, NM, for Appellants.

H. John Underwood, Ltd., Zach Cook, Ruidoso, NM, for Appellee.

## OPINION

CASTILLO, Judge.

{1} This is an appeal of the trial court's dismissal of a complaint seeking enforcement of restrictive covenants governing a residential subdivision. We hold that the trial court erred in concluding that the actions of Appellee, Jimmy Carpenter (Carpenter), did not violate the covenants, and we therefore reverse the dismissal.

## I. BACKGROUND

{2} Appellants are the owners of real property in River's Edge Subdivision (Subdi-

vision), located approximately fifteen miles east of Ruidoso in Lincoln County, New Mexico. Carpenter is also an owner of real property in the Subdivision. The Subdivision is subject to the covenants contained in the "Amended Declaration of Covenants, Conditions and Restrictions, Architectural Approval and Road Use and Maintenance Agreement of River's Edge Subdivision" (Covenants), recorded in the county records of Lincoln County. The parties purchased their real property after the Covenants were recorded. Paragraph 18 of the Covenants specifically restricts the use of all tracts of land within the Subdivision to residential purposes only. Paragraph 3 of the Covenants specifically prohibits the operation of any commercial or business activity within the Subdivision, with the exception of a personal home office.

{3} Carpenter owns Lot 6 in the Subdivision. At the time Carpenter purchased Lot 6, he received a copy of the Covenants, which he read and understood. Carpenter has not yet constructed a home on his lot, but he has constructed a 40-by 80-foot garage on the property. The garage is not used as a residence in any manner. Although the construction of the garage was an issue at trial, it is not an issue in this appeal.

{4} Carpenter owns and operates a trucking business with three commercial truck tractors and four commercial trailers pulled by the tractors (trucks and trailers). This business is currently operated out of Carpenter's home, which is located in Ruidoso. The trucking business is operated for profit. Carpenter stores and parks the trucks and trailers on Lot 6 when they are not in use. He also services and maintains the trucks and trailers in the garage located on Lot 6. During the periods the trucks are in use, Carpenter parks his personal vehicles on Lot 6. Before Carpenter began construction of the garage and before he began parking and storing his trucks and trailers on his lot in the Subdivision, Appellants complained to Carpenter and advised him that no commercial activity or business could be operated within the Subdivision.

{5} Based on the above findings, the trial court concluded that the Covenants run with the land, are binding on all of the parties, and are valid and enforceable. The trial court also concluded that Carpenter's activity on Lot 6 did not violate the Covenants and that Appellants therefore were not entitled to injunctive relief. We disagree.

## II. DISCUSSION

### A. Standard of Review

{6} Prior to beginning our analysis, we address the relevant standard of review. The parties contend abuse of discretion is the appropriate standard to apply. A complaint seeking injunctive relief is directed to the sound discretion of the trial court. *Wilcox v. Timberon Protective Ass'n*, 111 N.M. 478, 485, 806 P.2d 1068, 1075 (Ct.App.1990). When a trial court misapprehends the law, the court abuses its discretion. *See N.M. Right to Choose/NARAL v. Johnson*, 1999–NMSC–028, ¶ 7, 127 N.M. 654, 986 P.2d 450 (stating that a decision premised on a misapprehension of the law may be characterized as an abuse of discretion); *LaBalbo v. Hymes*, 115 N.M. 314, 318, 850 P.2d 1017, 1021 (Ct.App.1993) (stating that the trial court may abuse its discretion by applying an incorrect standard or incorrect substantive law in evaluating the grant of a preliminary injunction).

{7} Appellants challenge the finding that Carpenter was not engaging in prohibited commercial activity on the subject property. Although characterized as a finding, this determination actually functions as a conclusion. *See Webb v. N.M. Publ'g Co.*, 47 N.M. 279, 283, 141 P.2d 333, 335 (1943) (determining that the finding that an injury was accidental was a conclusion). Conclusions of law by the trial court are reviewed de novo. *Gutierrez v. Connick*, 2004–NMCA–017, ¶ 7, 135 N.M. 272, 87 P.3d 552 (applying a de novo standard of review to errors of law in the trial court's conclusions or in those findings that function as conclusions). We apply a de novo standard of review to the legal question to be answered in this case. *See Brooks v. Norwest Corp.*, 2004–NMCA–134, ¶ 7, 136 N.M. 599, 103 P.3d 39 ("Although a misapplication of the law is considered an abuse of discretion, our courts review de

novo the initial decision of whether the correct legal standard has been applied."); *Aragon v. Brown,* 2003–NMCA–126, ¶ 9, 134 N.M. 459, 78 P.3d 913 (stating that in cases seeking injunctive relief to enforce restrictive covenants, a question of law is reviewed de novo).

**B. Covenant Restrictions Regarding Commercial Activity**

{8} Paragraph 18 of the Covenants limits use of all of the tracts in the Subdivision to "residential purposes only." Paragraph 3 allows a personal home office, which is not at issue here, but that paragraph prohibits "commercial activity or business" on any tract in the Subdivision. The issue is whether Carpenter's actions on Lot 6 of the Subdivision violate these two restrictions.

{9} At the trial court level, Carpenter relied on *9394 LLC v. Farris,* 10 A.D.3d 708, 782 N.Y.S.2d 281 (N.Y.App.Div.2004), *County of Butte v. Bach,* 172 Cal.App.3d 848, 218 Cal.Rptr. 613 (1985), and *Liu v. Dunnigan,* 25 Md.App. 178, 333 A.2d 338 (Ct. Spec.App.1975), as support for his argument that he had not violated the Covenants. Appellants cite to these same cases to support their arguments on appeal. These cases relate primarily to the use of a residence for office purposes and are not sufficiently on point to assist in determining the nature of Carpenter's activities on Lot 6.

{10} Appellants contend that the trial court mistakenly relied on the fact that Carpenter was not in violation of paragraph 2 of the Covenants when it decided that Carpenter was not in violation of any of the covenant restrictions. Paragraph 2 prohibits the operation of junkyards, pipe yards, wrecking yards, auto sales, RV parks, or other similar businesses. We do not find this argument persuasive because Appellants did not allege that Carpenter violated paragraph 2 and because the trial court's determination that Carpenter complied with paragraph 2 has no direct bearing on the evaluation of the facts as to violations of paragraphs 3 and 18 of the Covenants. Appellants also argue that the trial court was wrong in relying on Carpenter's intent to build a home on Lot 6 in the future, as stated in finding of fact 15. We

find no error. This fact is supported by substantial evidence and establishes the general residential use of the Carpenter lot. The fact does not, however, answer the basic question in this appeal: what is the nature of Carpenter's use of the property as it relates to his trucks and trailers?

{11} Relying on the trial court's finding that "[t]here is substantial evidence to establish that [Carpenter] is not engaging in prohibited commercial activity on the subject property," Carpenter points to his own testimony at trial, as well as that of two other lot owners in the Subdivision, all of whom testified that they did not consider Carpenter to be operating or running a business in the Subdivision. While we agree that these three witnesses provided their assessment of Carpenter's activities, the ultimate determination as to the nature of this activity is a question of law. *See State ex rel. Martinez v. Lewis,* 116 N.M. 194, 201, 861 P.2d 235, 242 (Ct.App.1993).

{12} The issue is whether Carpenter's actions on Lot 6 of the Subdivision constitute commercial activity or a business. There is no dispute that Carpenter operates his trucking business from a location outside the Subdivision. It is equally undisputed that the vehicles used in the business are parked and stored on Lot 6 when they are not in use. Part of the business of running a trucking enterprise involves the storage of the vehicles when they are not in use. *Overmier v. Traylor,* 484 So.2d 676, 677 (La.Ct. App.1986) (holding that the restriction prohibiting commercial activity in a strictly residential subdivision prohibits the storing of heavy equipment on a lot in the subdivision because "[p]art of the business of construction involves the storage of the heavy equipment when it is not in use"); *see also Gwatney v. Miller,* 371 So.2d 1355, 1361 (La.Ct. App.1979) (holding that the storage and repair of equipment, including two tractor-trailers, used in connection with the business of operating a street fair violated covenants that limited use of property to residential purposes only); *Baumgardner v. Stuckey,* 1999 PA Super. 182, ¶¶ 12–13, 735 A.2d 1272 ("[S]toring [a] truck-tractor and/or trailers was a clear violation of the restrictive cove-

nant requiring [the property owner to] use his property for solely residential purposes."); *Bubolz v. Dane County*, 159 Wis.2d 284, 464 N.W.2d 67, 72 (Ct.App.1990) (prohibiting an electrical contracting business from the permanent long-term storage of business inventory, supplies, and equipment on the premises in a subdivision restricted to residential purposes only). Consequently, we hold that the parking and storage on Lot 6 of the vehicles used in Carpenter's business enterprise are commercial activities and that Carpenter therefore violated the provisions of paragraphs 3 and 18 of the Covenants by this activity.

{13} Similarly, there is no dispute that Carpenter repairs the trucks and trailers in the garage located on Lot 6. In analyzing this action in light of the Covenants, it appears that the trial court relied exclusively on paragraph 10 of the Covenants. Paragraph 10 requires any motor vehicle being repaired to be "housed in a garage or outbuilding for that purpose." While we agree that Carpenter complied with the restriction regarding the location of vehicle repairs, conformance with the location for the repairs does not negate the prohibition on commercial activity or the requirement that the property be used for residential purposes only. The repair of vehicles used in a commercial business constitutes commercial activity. *See Holaday v. Fraker*, 323 Ark. 522, 920 S.W.2d 4, 7 (1996) (holding that construc-

tion of a shop building used for repairing vehicles and boats for compensation violated a covenant requiring the use of property for residential purposes exclusively); *Gwatney*, 371 So.2d at 1361 (stating that the storage and repair of equipment used in a business is commercial activity). Accordingly, we hold that Carpenter's use of the garage on Lot 6 to repair the vehicles used in his business also constitutes commercial activity and that Carpenter thus violated the Covenants by conducting this activity in the Subdivision.

## III. CONCLUSION

{14} Carpenter violated paragraphs 3 and 18 of the Covenants by repairing, storing, and parking his business vehicles on Lot 6. The trial court's dismissal of Appellants' case is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

{15} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and MICHAEL E. VIGIL, Judges.